**EFiled: Jun 01 2017 04:50PM EDT**
**Transaction ID 60671006**
**Case No. 2017-0283-JRS**

COURT OF CHANCERY
OF THE
STATE OF DELAWARE

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: May 31, 2017
Date Decided: June 1, 2017

John W. Paradee, Esquire
Daniel F. McAllister, Esquire
Baird Mandalas Brockstedt, LLC
6 South State Street
Dover, DE 19901

Megan T. Mantzavinos, Esquire
Marks, O'Neill, O'Brien,
   Doherty & Kelley, P.C.
300 Delaware Avenue, Suite 900
Wilmington, DE 19801

Ryan P. Newell, Esquire
Connolly Gallagher LLP
1000 North West Street, 14th Floor
Wilmington, DE 19801

Joseph C. Schoell, Esquire
Michael J. Maimone, Esquire
Drinker Biddle & Reath LLP
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801

Re:  *Charlie's Waste Services, LLC v. Kent County Levy Court*
     C.A. No. 2017-0283-JRS

Dear Counsel:

This case arises from Kent County's solicitation of bids in connection with

Contract T-18 for FY2018–FY2020 Trash Collection Services. Specifically, on

February 8, 2017, Kent County issued an invitation to submit sealed bids for a waste

removal services contract. According to the bid invitation, the County advised

interested bidders that two contracts would be awarded to two bidders. Charlie's Waste Services, LLC ("Charlie's") initiated this action against Kent County Levy Court (the "County"), Waste Industries of Delaware LLC ("Waste Industries") and BFI Industries, LLC d/b/a Republic Services of Delmarva ("Republic") seeking to enjoin the County from awarding the waste removal contracts to Waste Industries or Republic, neither of which submitted the lowest bid. Charlie's alleges that it was the lowest responsible bidder and, therefore, the County was required by statute to award the contract to Charlie's.

I previously denied Charlie's motion for a temporary restraining order/preliminary injunction upon finding that Charlie's was, in essence, seeking permanent injunctive relief. I did, however, grant Charlie's motion to expedite so that a final adjudication of the matter could occur prior to the effective date of the contracts at issue here.[1] Thereafter, I asked the parties to address a threshold statutory issue so that I could determine the applicable law and frame the factual

---

[1] The contracts are effective as of today, June 1, 2017.

issue(s) to be decided.[2]  After offering that guidance, I allowed limited discovery

directed to the issue of whether the County had complied with Section 4725 in

awarding the bid to Waste Industries and Republic.  The parties completed that

discovery and then submitted briefs on the questions of whether the County

complied with the applicable statute and whether Charlie's is entitled to the

injunctive relief it seeks.  I heard oral argument on these issues on May 30, 2017.

By letters dated May 31, 2017, all parties agreed that, given the expedited

nature of these proceedings, the Court should consider the record as submitted to be

a "stipulated trial record" from which the Court may make a final determination of

whether the County complied with Section 4725 in its award of Contract T-18 to

---

[2] As discussed below, I asked the parties to address whether the County's solicitation to bid on this trash removal contract was governed by 9 *Del. C.* § 4725 ("Section 4725"), relating specifically to waste removal contracts involving Kent County, or by the State Procurement Act, 29 *Del. C.* § 6900, *et seq.*  I concluded that Section 4725 governed and, accordingly, that the County was obliged to award the contract to the "lowest responsible bidder" as required by that statute.  Tr. of Telephonic Oral Arg. and Rulings of the Ct. on Pl.'s Appl. for a Permanent Inj., May 11, 2017 ("May 11 Oral Arg. Tr.") at 39:15–20, 39:22–40:1.  I also determined that, because Section 4725 does not define the term "responsible bidder," it was reasonable for the County to employ evaluative criteria, such as those contained in its Invitation to Bid Contract T-18, in order to guide its determination of whether a bidder was "responsible."  *Id.* at 40:1–15.

Waste Industries and Republic.[3]  For the reasons that follow, I conclude that the County has complied with its statutory mandate and that Charlie's request for a permanent injunction, therefore, must be denied.

## I.      Factual Background[4]

Prior to Contract T-18, the contract for the County's trash collection services had always been awarded to the lowest bidder.  By all accounts, the County has been unhappy with the current provider of trash collection services—the company that submitted the lowest bid during the last procurement process for this contract—and has, in fact, determined that the contractor was not qualified to do the required work. The problems with the current contractor have included missed pickups, destruction of trashcans and other property, poor vehicle maintenance and poorly trained personnel.  In fact, the County has had to hire others on an emergency basis to fulfill the contract as a stopgap.[5]

---

[3] Transaction ID 60665346; Transaction ID 60665693.

[4] This is the latest in a series of Court rulings in this case.  I dispense with a more thorough recitation of the facts as they have been recited already in previous rulings.

[5] Levy Ct. Hearing Tr., March 14, 2017 ("Levy Ct. Tr.") at 2:23–4:4, 7:10–8:18.

Given these past difficulties, the County determined that it was best to take a different approach to procurement for Contract T-18.[6] Specifically, the County included the following elements in its Invitation to Bid Contract T-18 (the "ITB") that all bidders would have to demonstrate:

> i. Demonstrated history of providing equipment and services of comparable specifications, scope and value.
> ii. The background, experience, resources, reputation, financial resources, years in business and references.
> iii. Customer service, *i.e.*, method of addressing missed cans, special events, guaranteed turnaround times for cart maintenance, and other customer service items.
> iv. The bid and pricing structure.[7]

In addition to these evaluative criteria, the ITB also required bidders to provide a Bid Bond, three work-related references, three letters of recommendation from current municipal contracts in the State of Delaware and documentation of insurance coverage with a General Aggregate Limit of Liability of $5,000,000.[8]

---

[6] Invitation to Bid Contract T-18, Contract Documents and Bid Specifications for FY2018–FY2020 Trash Collection Services, February 8, 2017 ("ITB").

[7] *Id.*

[8] *Id.*

Bidders were advised that the contract award would be based, in large part, upon scores attributed to the bidder's ability to satisfy the criteria outlined in the ITB as determined by evaluators designated by the County.[9] The County named three evaluators—Andrew Jakubowitch, Director of Public Works for Kent County; Susan L. Durham, Director of Finance for Kent County; and Michael J. Petit de Mange, County Administrator for Kent County.[10] Nothing in the bid solicitation materials states that the evaluators were to reject bidders from the process that they deemed unqualified. Instead, the ITB contemplated that the evaluators were to score the bids and then make their recommendations to the members of the Levy Court who would then have the final say.[11]

The evaluators unanimously scored Waste Industries and Republic highest among the bidders and subsequently recommended that the contracts be awarded to

---

[9] *Id.*

[10] *See* Dep. of Andrew Jakubowitch ("J. Dep.") at 12:14–18; Dep. of Michael Petit de Mange ("PDM Dep.") at 6:15-20; Deposition of Susan Durham ("D. Dep.") at 7:6–19, 9:14–23.

[11] ITB at 13.

these two contractors.[12]  After receiving the evaluators' recommendation, the Levy Court overwhelmingly voted in favor of awarding the contracts to Waste Industries and Republic with only one Commissioner voting otherwise.[13]

## II.    Analysis

Each of the County's three evaluators have now been deposed and each has further explained the reasoning that supported his or her determination that Charlie's should not be selected for this contract.  Before turning to that testimony, and the contemporaneous evidence regarding the County's decision to award the contracts to Waste Industries and Republic, I reiterate briefly the legal issue that remains to

---

[12] Ex. 1 to Pl.'s Mem. of Law in Supp. of a Permanent Inj. (Mem. From Andrew Jakubowitch to Levy Ct. Commissioners, Mar. 14, 2017) ("The proposals were evaluated by the County Administrator, Finance Director and Public Works Director on the bid award basis [laid out in the ITB].  The best evaluated bids, based on the information provided, were from Waste Industries and Republic Services.").

[13] Levy Ct. Tr. 27:7–21.  Charlie's makes much of the facts that one evaluator scored Charlie's bid 91 out of 100 and one Commissioner of the Levy Court voted to award the contract to Charlie's.  According to Charlie's, this is evidence that the County deemed Charlie's "responsible" or "qualified."  I disagree.  Nothing in the record indicates that the lone voice of an evaluator or a Commissioner would have any binding effect on the County's ultimate decision regarding the award of this contract.  Moreover, the fact that one of the evaluators gave a score of 91 does not undermine his clear testimony, as discussed below, that he deemed Charlie's not qualified to perform the contract.

be decided here. After determining that Section 4725 governed the County's procurement of Contract T-18, I held that the next, and possibly only, issue was whether the County declared Charlie's to be a responsible bidder at any point after its bid was submitted. In this regard, I observed that if Charlie's was deemed a responsible bidder, then, under Section 4725, the County should have awarded one of the contracts to Charlie's since it is undisputed that Charlie's submitted the lowest bid. On the other hand, if Charlie's was not deemed to be a responsible bidder prior to the application of the evaluative criteria, then the County was free to consider those criteria to aid in its determination of who was or was not a responsible bidder and to award the contract accordingly.[14]

Section 4725 does not define the term "lowest responsible bidder." The term has been construed by this court, however, to mean the "lowest bidder unless that bidder is found not responsible, *i.e.*, not qualified to perform the particular work."[15] When engaged in the procurement process, a state or municipal contracting agency

---

[14] May 11 Oral Arg. Tr. at 40:17–41:7.

[15] *Danvir Corp. v. City of Wilm.*, 2008 WL 4560903, at *5 (Del. Ch. Oct. 6, 2008).

is vested with broad discretion, and this court will not overturn an agency decision to award a contract that complies with the law unless that decision was made arbitrarily, capriciously, or in bad faith.[16] This deference is appropriate in all aspects of the procurement process, including in connection with the determination of whether bidders are qualified under the applicable statute or under the bid criteria established by the agency.[17] Indeed, "in the context of the public procurement process, there is a 'strong presumption that government . . . officials exercise their duties in good faith.'"[18]

After carefully reviewing the record here, I am satisfied that the County officials charged with overseeing the award of this contract believed, and ultimately determined, that Charlie's was not qualified to perform the particular work required to fulfill Contract T-18. The problem began with the submission of Charlie's bid,

---

[16] *Id.*

[17] *See Julian v. Del. Dept. of Transp.*, 53 A.3d 1081, 1083 (Del. 2012) (discussing the broad discretion afforded to state agencies when making bid determinations such as bid responsiveness).

[18] *Doctors Pathology Servs. P.A. v. State Div. of Public Health, Dept. of Health and Social Servs.*, 2009 WL 4043299, at *8 (Del. Ch. Nov. 20, 2009).

which included incorrect insurance information, none of the required financial information other than the listing of M&T Bank as a reference, no letters of recommendation and no bid bond.[19] As the County correctly points out, any of these omissions provided grounds for the County to reject Charlie's bid without any further consideration, as it was entitled to do by statute and by the ITB.[20] The County decided, however, not to reject the bid outright and, instead, allowed Charlie's to correct its bid and to make its best pitch for this contract.[21]

But the County's serious doubts were not adequately addressed when Charlie's submitted corrected bid materials. Each of the County evaluators articulated legitimate concerns regarding the age of Charlie's equipment and its ability to maintain that equipment with what appeared to be inadequate staff. In this regard, Charlie's bid materials indicated that it had arranged for only one mechanic

---

[19] Dep. of Paul M. Pearson ("P. Dep.") at 8:19–9:1, 16:7–18:21.

[20] *See* 9 *Del. C.* § 4725 (". . . the County may reject any and all bids. . ."); ITB at 14.

[21] *See* P. Dep. at 16:7–9; J. Dep. at 44:21–45:9. This, of course, undermines Plaintiff's suggestion that the County never intended to give Charlie's a fair shot. That is, in fact, precisely what the County did when it allowed Charlie's to correct its deficient bid.

to service its fleet of older equipment. And it was not clear that this mechanic would be located in Kent County or that Charlie's service facility would be located in Kent County either. There were also concerns with Charlie's experience handling a contract of the size involved here. Charlie's past municipal experience involved contracts substantially smaller than the County contract and Charlie's did not convince the County that it could ramp up to handle a contract of this scale. This was especially so given that Charlie's was a new company and there was no clear indication that its majority owner, Blue Hen Dispose-All, would or could be obligated to provide support for this contract. Finally, in addition to vehicle maintenance and related staffing concerns, the County had legitimate concerns that Charlie's lacked adequate staffing and resources to receive and address customer complaints.[22] All of these deficiencies were deemed even more troubling by the

---

[22] *See* J. Dep. at 26:17–29:5, 39:23–40:19, 64:5–14, 68:24–70:2, 74:10–12; PDM Dep. at 13:4–14:7, 21:18–23, 22:5–23:1, 23:12–22, 30:3–17, 31:20–32:4, 33:19–34:4; D. Dep. at 13:1–14:15, 20:18–23:18, 25:12–15, 26:9–27:12. *See also* J. Dep. at 46:13–20 ("[Waste Industries and Republic] were the two bidders that met the criteria that we presented and were deemed able to perform the contract."). Charlie's has made the point that the contemporaneous evidence does not support the evaluators' post hoc deposition testimony regarding the County's rationale for rejecting Charlie's bid. As best I can tell, Charlie's makes this point in support of two arguments: (1) the County failed in its obligation to make a record of its decision that would allow proper judicial review; and (2) the lack of

County officials given the County's immediate past history of having awarded the

trash collection contract to the lowest bidder only to find that that contractor was

wholly unprepared and unable to deliver the necessary services.[23]

contemporaneous, corroborating evidence undermines the credibility of the testimony given by the County's evaluators at deposition. To be sure, the County was obliged to create a record of its decision that would enable judicial review. *See New Castle Cnty. Council v. BC Dev. Assoc.*, 567 A.2d 1271, 1276 (Del. 1989) ("When [a governmental agency] makes a … decision [subject to judicial review] without establishing the basis for its action, it thwarts the ability of a court to provide effective review."). After reviewing this record, however, I have no reservations regarding the Court's ability to engage in a proper review of the County's decision to reject Charlie's bid. The contemporaneous evidence reveals: that Jacobowitz described to the Commissioners the evaluators' recommendation that Waste Industries and Republic were best positioned to perform the contract based on the evaluative criteria; that the Commissioners were informed that the bid evaluation process was "fair, balanced, and the individuals awarded the contract were the most wise decisions based on the" evaluations; that the evaluators were unanimous in their recommendation to award the bid to Waste Industries and Republic; that the evaluators were skeptical of Charlie's ability to perform under the contract; and that the County believed that it needed to engage in a  more searching evaluation of the bids due to problems it had encountered with the current holder of the waste removal contract. Levy Ct. Tr. at 5:10–16, 8:12–9:5, 17:8–21, 19:7–17, 23:7–16.

[23] Levy Ct. Tr. at 2:23–4:4, 7:10–8:18, 10:19–24, 11:8–12, 12:4–7, 19:9–20:18. Ex. 1 to Pl.'s Mem. of Law in Supp. of a Permanent Inj. (Mem. From Andrew Jakubowitch to Levy Ct. Commissioners, Mar. 14, 2017) ("Due to operational issues with the current contract holder, Republic Services is also providing collection services to ensure that all collections occur as scheduled. Republic Services was added under emergency procurement in April 2016 to take over 10% of Inlands collection.").

Charlie's points to some correspondence with bidders that it claims reveals that the County pre-cleared the ITB's reference requirements with Waste Industries and Republic before finalizing the invitation to bid, thereby improperly favoring those bidders. To be sure, that correspondence exists and, at first glance, it does present some cause for concern.[24] But the reality is that Charlie's bid was considered even though it did not meet the reference requirements. And there is no indication in the record that Charlie's failure to provide the requested references was a source of the County's ultimate determination that Charlie's was not qualified to do this job. Rather, it was Charlie's lack of experience, lack of newer equipment, lack of adequate staffing and other related concerns that led the evaluators to determine that Charlies' would not be able to perform the contract as required.[25]

---

[24] Ex. 4 to Pl.'s Mem. of Law in Supp. of a Permanent Inj. (Jan. 31, 2017 e-mails from Andrew Jakubowitch to Don Lucas and Alan Thienpont).

[25] *See Furnival Mach. Co. v. New Castle Cnty.*, 1977 WL 9565, at *2–3 (Del. Ch. Jan. 21, 1977) (stating that bid "[s]pecifications are not improper merely because they tend to favor one [bidder] over another inasmuch as a [service provided] by one [bidder] may be necessary to meet the needs of the public").

I also reject Charlie's suggestion that the County improperly colluded with Republic when Jakubowitch conferred with representatives of Republic regarding whether its bid was its "best and lowest" and then permitted Republic to make changes to its bid. The record reveals that the County had "*ex parte*" discussions with several of the bidders, including Charlie's. Indeed, Charlie's also was permitted to alter its bid materials after its initial non-compliant submission.[26] In any event, Republic's downward adjustment of its bid price still did not bring it to "low bidder" status; that status belonged to Charlie's and Charlie's was scored accordingly.[27]

Based on the evidence submitted, I am satisfied that the County determined, based on legitimate evaluative criteria, that Charlie's was not the "lowest responsible bidder" because it was, in fact, "not qualified to perform the particular work." I have little doubt that the County was not focused on the "lowest responsible bidder"

---

[26] J. Dep. at 44:21–45:9; P. Dep. 16:7–9, 26:1–14.

[27] Ex. 6 to Pl.'s Mem. of Law in Supp. of a Permanent Inj. (Mar. 13, 2017 Ltr. From Republic to Jakubowitch lowering Republic's unit bid price); Ex. H to Def. Kent Cnty. Levy Ct.'s Mem. Submission Relating to the Cnty.'s Determination of Responsible Bidders.

standard as it worked through the procurement process for this contract and, indeed,

I doubt very much that it appreciated that Section 4725 applied here. But even if

this is true, the fact that the County did not understand that its award of this contract

was governed by Section 4725 does not mean that it did not comply with

Section 4725. After reviewing the evidence, I am satisfied that even though the

County did not formally declare that Charlie's was not a responsible bidder, the

County officials involved here did determine that Charlie's was not qualified to

perform the contract.[28] The real question, then, is whether Charlie's has met its

---

[28] In this regard, I reject Charlie's argument that Section 4725 requires the County to make some sort of formal declaration that a bidder is or is not "responsible" in order to comply with the statute. *See BC Dev. Assoc.*, 567 A.2d at 1276–77 (holding that the agency "need not draft a detailed statement of findings of fact and conclusions of law in order to explain [its decision]" and that the agency complies with its duty to explain its decision if it "creates a record" that allows the court to fulfill its review function); *Coker v. Kent Cnty. Levy Ct.*, 2008 WL 5451337, at *7–8 (Del. Ch. Dec. 23, 2008) (considering whether the reasons supplied by the county when evaluating a conditional use zoning application met the standard that conditional use would be approved if "the public health, safety and general welfare will not be adversely affected," but not requiring any explicit determination by the County that the standard was not met). If the County uses non-arbitrary means to determine whether a bidder is qualified to perform the contract, determines through those means that a bidder is not qualified and makes an adequate record of that decision, then the County complies with the statute when it declines to award the contract to the unqualified bidder, even if that bidder is the lowest bidder. *Cf. Danvir Corp.*, 2008 WL 4560903, at *5 (holding that a bidder is not responsible if that bidder is "not qualified" to do the work).

burden to demonstrate that the County acted arbitrarily, capriciously, or in bad faith in making that determination.  I see no basis in the record to conclude that Charlie's has carried this burden.

Plaintiff's request for a permanent injunction is denied and judgment is entered for the Defendants.  Counsel shall submit a proposed final implementing order within five (5) days.

Very truly yours,

*/s/ Joseph R. Slights III*